ST. LOUIS-NEW ORLEANS NAVIGATION CO. *v.*
HYNICKA ET AL.

(Decided December 9, 1929.)

*Messrs. Bolsinger & Black,* for plaintiff in error.
*Messrs. Ragland, Dixon & Murphy,* for defendants in error.

HAMILTON, J. Plaintiff in error, the St. Louis-New Orleans Navigation Company, which corpora-

tion was plaintiff below, brought an action against William O. Mashburn and Coney Island, Inc., and other individual persons.

The action below grew out of the sale of the steamboat East St. Louis by the plaintiff owner to the defendants named in the petition, for the sum of $75,000.

It appears that on the 3d day of November, 1923, the plaintiff navigation company gave to H. C. Newland, William O. Mashburn, and R. K. Hynicka, and associates, or their assigns, the right and option to purchase from them at any time between said date and February 3, 1924, the steamer East St. Louis, together with all machinery and appurtenances on said steamer East St. Louis, for the sum of $75,000, upon certain terms named in the option. The option was exercised and a bill of sale for the steamboat East St. Louis was executed and delivered to Coney Island, Inc., its successors and assigns, in consideration of the sum of $75,000 to the navigation company in hand paid. The bill of sale recites that the sellers ''have bargained and sold, and by these presents do bargain and sell, unto the said Coney Island, Inc., their successors and assigns, all of the said steam stern wheel vessel, together with all the masts, bowsprit, sails, boats, anchors, cables, tackle, furniture, and all other necessaries thereunto appertaining and belonging.''

At the time of the giving of the option, the seller carried marine insurance on the boat, and there were also some stocks of merchandise, and this brings us to the controversy, which is over the ownership of the stock of merchandise, and over the question as

to the prorating of the premium on the marine insurance.

The petition sets up two causes of action.

The first cause of action seeks to recover a prorated share of the cost of the marine insurance, which was carried by the plaintiff at the time of the execution of the option and the bill of sale thereunder.

Plaintiff claims in the petition that it is entitled to recover the prorated share of the cost of the insurance policy. As to this claim, there was no evidence supporting the right of the plaintiff to recover, and that claim may be disregarded.

As its second cause of action plaintiff claims that prior to the execution of the bill of sale it was the owner of 105 cases of Lasch's Product, of the value of $798, of five barrels of root beer, of the value of $400, and of one lot of drinking cups of the value of $128.40, that said property was placed in the warehouse of said William O. Mashburn, to be held by said Mashburn until defendants should furnish William O. Mashburn the shipping instructions, or until plaintiff would call for said property, or the defendant Coney Island, Inc., would purchase the same for the sums above set forth; and plaintiff further alleges that said property was the property of the plaintiff, and that the defendants and each of them fraudulently and unlawfully converted said property to their own use, and that, although plaintiff demanded a return of the property, defendants failed and refused to return the same to the plaintiff, by reason whereof the plaintiff is damaged in the sum of $1,326.40.

Later all of the defendants were dismissed from the action without prejudice, with the exception of William O. Mashburn and Coney Island, Inc. The case thereupon went to trial against William O. Mashburn and Coney Island, Inc.

At the close of all the evidence, counsel for defendants moved for an instructed verdict, and the trial court, in granting the motion, said:

"The evidence discloses that after the season of 1923 the boat was used for excursion purposes around the city of Pittsburgh. There is no evidence in this case that the boat was ever used or equipped to be used for anything except pleasure purposes. The products on the boat were there to be used and sold thereon, as shown by the evidence, from three different soda fountains.

"Under the state of the evidence and under the optional agreement and the bill of sale, the court has determined as a matter of law that these products were appurtenances of that boat. Therefore, there is no question of fact for the jury to determine in this case, and the court instructs you to retire, select one of your number as foreman and return a verdict in favor of the defendants."

A verdict was returned for the defendants, and judgment entered on the verdict. From that judgment plaintiff prosecutes error to this court.

The first question for determination is whether or not the 105 cases of Lasch's Product, said product as shown by the evidence being a syrup and concentrate which was used in making bitters by adding water, to be sold for beverage purposes, and the 5 barrels of root beer, passed under the terms of the

option and bill of sale as an appurtenance to the ship.

The question as to the drinking cups may be eliminated. There was no evidence as to what became of the cups. It was not shown that they were ever delivered to any of the defendants.

How syrup and concentrate or essence and root beer could be considered as an appurtenance to a ship, we are unable to see. An appurtenance is a thing belonging to another thing as principal, and which passes as incident to the principal thing. The use of the word "appurtenance" in the option and bill of sale is stressed, but we do not think the use of the word adds to or would take from anything that would pass with the principal thing, in this case, the steamboat. Had the word "appurtenance" not been used, the property in question would occupy the same status.

The case of *Gale* v. *Laurie*, 5 Barnewell & C., 156, 108 Eng. Reports, Rep., 58, is cited by counsel for the defendants in error, as supporting the proposition that this merchandise in question passed as an appurtenance to the ship. We have examined that case, and find that it is not a supporting authority here, for the reason that that case involved the construction of an English statute. The English statute provided that, where owners furnished a ship for a particular voyage, and negligence resulted in damage by reason of the operation of the ship on the voyage, the liability of the owners should be limited to the ship and freight due, or to become due. The ship was let for a whaling and shipping voyage, and the vessel was fully equipped with materials and

stores for the voyage. The question arose as to whether or not fishing stores for the purpose of the voyage should be included in the liability provision under the statute, and the court held that they were liable, since the plain intention of the statute was to limit the liability of the owners to the ship and its equipment.

It is suggested that the merchandise in question here was such as would be used on a pleasure vessel.

We have examined the authorities on the question of "appurtenances," and the result of the decisions seems to be that, under the word "appurtenances," as used in the bill of sale, everything belonging to the ship which is necessary for her as a ship passes.

The transaction in the case under consideration is an absolute sale of the ship without suggestion as to its use. They may or may not use it as a pleasure boat. In other words, the goods in question were in no wise necessary for her as a boat. Indeed it has been held that the sale of a brig will not include the chronometer, unless the evidence showed the parties intended it should pass. *Richardson* v. *Clark,* 15 Me., 421. And in many cases it is held that a ship's boat does not pass as an appurtenance. It has also been held that the ship's ballast does not pass.

We have therefore been unable to find any supporting authority for the conclusion of the trial court that the goods here in dispute passed as an appurtenance to the boat. There is no evidence that the parties intended that the goods should pass with the boat. On the contrary, the evidence shows affirmatively that the plaintiff claimed the goods at the time or shortly after the option was given. The

trial court therefore erred in instructing the verdict on the ground that the goods passed as an appurtenance to the boat.

However, another question is raised in the case which has called for a very careful and analytical reading of the bill of exceptions, and that is, Was there any evidence that Coney Island, Inc., converted this merchandise to its own use?

The secretary of the plaintiff company, and manager of the boat at the time the option was given, testified as follows:

"Q. I want to call your attention to what beverages were on that boat at the time you executed the option of November 3rd. Are you able to state the quantities and the character of what beverages were then on that boat at that time? A. Yes, sir.

"Q. What were they? Go ahead and state. A. There were 105 cases of Lasch's products, which is syrups mixed with water, and there were five barrels of concentrated syrup of root beer.

"Q. Was there anything else? A. Then there were several cases of drinking cups, not opened in the upper warehouse.

"Q. Did you have any conversation with Mr. Mashburn in reference to those beverages? A. Yes, sir.

"Q. What was that conversation? A. Then I told him that this stuff was put on consignment and I was afraid it would freeze and wondered where I would get a warehouse to put it in, and he said he would take care of it until we disposed of our proposition one way or the other, and he came down with his trucks, sent his men down, and we checked the

stuff, quantity of the cases and the barrels that we loaded and sent to his warehouse.

"Q. Have you had that since that time in your possession? A. No, sir.

"Q. Has your company? A. No, sir."

Mashburn admits in his testimony that he received the goods and put them in his warehouse; that he left instructions that they should be delivered, as called for, to Coney Island, Inc. He states positively that he does not know that the Coney Island Company ever received any of it, but that the goods were gone from his warehouse. There is evidence that there were similar beverages sold on the boat during the succeeding season, but where they came from the witness did not know, nor could he testify as to any quantity used. This is the only substantive testimony tracing the goods, as to who got them, or who converted them to their own use. The evidence fully justifies the finding that the goods belonged to the plaintiff. The evidence establishes the taking possession of the goods by Mashburn and putting of them in his warehouse, and that he exercised dominion over them. This would be sufficient to take the case to the jury as against Mashburn.

In passing, will say that the record shows more clearly a case of a warehouse loss, or a claim against the warehouseman for loss of goods, than an action in conversion.

Our conclusion is that there is no evidence to hold the Coney Island Company as having converted the goods in question to its own use, and on this ground the trial court will be affirmed as against the Coney Island Company. The judgment will be reversed

102

as against the defendant William O. Mashburn, for the reason that having received the goods into his warehouse, and later exercising dominion over them, constitute some evidence tending to show conversion of the goods, which would make him liable for their value.

The judgment will be affirmed as to Coney Island, Inc., and reversed as to William O. Mashburn.

*Judgment accordingly.*

CUSHING, P. J., and ROSS, J., concur.